IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

REGINA R., )
)
        Plaintiff, )
)
v. ) 1:22CV884
)
MARTIN J. O'MALLEY,[1] )
Commissioner of Social Security, )
)
        Defendant. )

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

    Plaintiff Regina R. ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The Parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

    Plaintiff protectively filed applications for DIB and SSI on January 29, 2020, alleging a disability onset date of February 25, 2019 in both applications. (Tr. at 10, 219-31.)[2] Her

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

applications were denied initially (Tr. at 69-93, 116-23) and upon reconsideration (Tr. at 94-115, 130-37). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at. 138-40.) On February 25, 2022, Plaintiff, along with her attorney, attended the subsequent telephonic hearing, at which both Plaintiff and an impartial vocational expert testified. (Tr. at 10.) Following this hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 17), and on August 16, 2022, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001)

2

(internal brackets and quotation omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 *et seq.*, provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 *et seq.*, provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 12.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

Post Traumatic Stress Disorder, Depression, Anxiety[.]

(Tr. at 13.) The ALJ found at step three that none of the impairments identified at step two, individually or in combination, met or equaled a disability listing. (Tr. at 13-14.) He therefore assessed Plaintiff's RFC and determined that she could perform work at all exertional levels, with the following, non-exertional limitations:

> [Plaintiff] is limited to performance of simple, routine tasks and can concentrate sufficiently to complete those tasks for a sustained 2 hour period and 8 hour workday; only occasional contact with co-workers and supervisors; no assembly line work; no work with high production quotas.

5

(Tr. at 14.) Based on this determination and the testimony of a vocational expert, the ALJ determined at step four of the analysis that Plaintiff's past relevant work as a Project Director exceeded her RFC. (Tr. at 16.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in significant numbers in the national economy. (Tr. at 16-17.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 17.)

Plaintiff now contends that, in assessing her RFC, the ALJ failed to properly consider the effects of Plaintiff's limitations in maintaining concentration, persistence, and pace. In particular, Plaintiff argues that the ALJ failed to account for Plaintiff's moderate limitations in concentration, persistence, and pace in the RFC assessment in accordance with Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). At step three of the sequential analysis, the ALJ in the present case determined that Plaintiff has moderate limitations in concentration, persistence, and pace. In Mascio, the Fourth Circuit explained that, where moderate limitations in concentration, persistence and pace are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit specifically held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Mascio, 780 F.3d at 638 (internal quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

6

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in
> concentration, persistence, or pace at step three does not translate into a
> limitation in Mascio's residual functional capacity. For example, the ALJ may
> find that the concentration, persistence, or pace limitation does not affect
> Mascio's ability to work, in which case it would have been appropriate to
> exclude it from the hypothetical tendered to the vocational expert. But because
> the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted). However, as previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> does not broadly dictate that a claimant's moderate impairment in
> concentration, persistence, or pace always translates into a limitation in the
> RFC. Rather, Mascio underscores the ALJ's duty to adequately review the
> evidence and explain the decision.
>
> An ALJ may account for a claimant's limitation with concentration, persistence,
> or pace by restricting the claimant to simple, routine, unskilled work where the
> record supports this conclusion, either through physician testimony, medical
> source statements, consultative examinations, or other evidence that is
> sufficiently evident to the reviewing court.

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (internal ellipses omitted) (finding that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes, and required only frequent contact with supervisors, co-workers, or the public" sufficiently accounted for a plaintiff's moderate limitations in concentration, persistence, or pace in light of the ALJ's explanation throughout the administrative decision) (quoting Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)); see also Sizemore v. Berryhill, 878 F.3d 72, 80-81 (4th Cir. 2017) (rejecting the plaintiff's argument under Mascio where the ALJ relied on the opinion of the state agency psychologist that, notwithstanding moderate limitations in concentration, persistence, and pace, the plaintiff could sustain attention sufficiently to perform simple, routine, repetitive

tasks with additional limitations); Shinaberry v. Saul, 952 F.3d 113, 121-22 (4th Cir. 2020) (same, and noting that Mascio "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC").

Here, as in Mascio, the ALJ found moderate limitations in concentration, persistence, or pace at step three of the sequential analysis. (Tr. at 13.) Later in the sequential analysis, the ALJ formulated a mental RFC limiting Plaintiff to the "performance of simple, routine tasks and can concentrate sufficiently to complete those tasks for a sustained 2 hour period and 8 hour workday; only occasional contact with co-workers and supervisors; no assembly line work; [and] no work with high production quotas." (Tr. at 14.) Plaintiff now argues that, in making these RFC findings, the ALJ did not fully account for Plaintiff's ability to stay on task in light of her moderate difficulties with concentration, persistence, or pace. Plaintiff further contends that the ALJ failed to "build an accurate and logical bridge from that evidence to his conclusion" so that the Court may afford Plaintiff meaningful review of the SSA's ultimate findings. See Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal brackets omitted) (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)).

However, as set out above, remand is not required under Mascio where the ALJ's discussion of, and reliance on, substantial record evidence adequately explains why the plaintiff's moderate limitation at step three did not translate into any additional RFC restrictions. In this case, the ALJ considered medical opinion evidence from two State agency psychological consultants, Drs. Jennifer Fulmer and Keith Noles. (Tr. at 15-16.) Notably, both consultants offered very similar views of Plaintiff's concentration, persistence, and pace

limitations which, as the ALJ notes, were further supported by the treatment notes of Plaintiff's treating physician, Dr. Sophia Yuan. (Tr. at 15-16, 75, 113, 604.)

In pertinent part, Dr. Fulmer opined that, despite Plaintiff's moderate limitations in concentration, persistence, and pace, she retained "the ability to carry out very short and simple instructions and is able to maintain attention and concentration for 2 hours at a time as required for the performance of simple tasks." (Tr. at 75.) Similarly, Dr. Noles opined that Plaintiff would "have some mild distractibility and slowed work pace due to mental [impairments]" but remained "able to maintain attention and concentration for 2 [hour] periods over an 8 [hour] day in order to carry out [simple, routine, repetitive tasks]." (Tr. at 113.) The ALJ found these opinions persuasive and adopted them when formulating Plaintiff's RFC assessment. The ALJ explained that these opinions were consistent with, and supported by, Plaintiff's treatment notes "showing improvement with regular therapy to the point she requires no medication and demonstrates no severe impairment of memory, concentration, thought processes or judgement as noted by her therapist" and the treatment note that reports "some impaired concentration consistent with a limitation to performance of simple tasks but no impairment of memory, orientation or thought processes." (Tr. at 15-16.)

In reliance on this opinion evidence and treatment records, the ALJ found that Plaintiff was "limited to performance of simple, routine tasks and can concentrate sufficiently to complete those tasks for a sustained 2 hour period and 8 hour workday." (Tr. at 14.) He further found that Plaintiff could not perform assembly line work or work with high production quotas, and limited her to only occasional contact with co-workers and

9

supervisors. (Tr. at 14.) Thus, the ALJ not only incorporated the opinions of both Dr. Noles and Dr. Fulmer in full, but also included additional limitations addressing Plaintiff's concentration, persistence, and pace limitations. Unlike in Mascio, the ALJ included additional limitations beyond just a limitation to unskilled work. Further, the ALJ explained the basis for the decision and relied on opinion evidence and treatment records supporting that conclusion.

The only evidence Plaintiff cites as evidence of greater limitation is the opinion that her therapist, Suzanne Doyle, LCMAC, LCAS, issued in a single page, checkbox form signed on February 17, 2022, just eight days before Plaintiff's administrative hearing. (Tr. at 717.) As Plaintiff correctly notes, Ms. Doyle posited that Plaintiff's symptoms were severe enough to interfere with attention and concentration 25% or more of the workday and that Plaintiff's ability to concentrate, persist, or maintain pace was "marked." (Tr. at 717.) However, in the context of his analysis at step three of the sequential analysis, the ALJ (1) specifically found that Ms. Doyles' "treatment notes [were] inconsistent with her stated opinion" and (2) proceeded to set out these inconsistencies at length, noting that:

> The claimant's therapist has treated the claimant and the record contains her treatment notes; however, these notes do not record any symptoms or clinical findings consistent with her opinion at Exhibit 11F. While initially claimant showed some distractibility and manic thought content, subsequent treatment notes showed improvement in her symptoms with treatment with some residual anxiety, but no impaired thought processes or psychosis consistent with the severe limitations in the opinion. Recent mental status exams by the claimant's therapist have all been normal with no impaired thought processes, concentration, judgement or memory.

(Tr. at 13-14 (internal citations omitted).) In setting the RFC, the ALJ again explained that Plaintiff's "limitations are not as severe as the therapist opined to as the record is not consistent with them" so the opinion was unpersuasive. (Tr. at 15.) Notably, Plaintiff does not challenge

10

the ALJ's treatment of Ms. Doyle's opinion. Moreover, to the extent Plaintiff's argument relies on Ms. Doyle's treatment notes, both the ALJ and the state agency consultants expressly considered Ms. Doyle's findings when formulating their RFC assessments. Because the ALJ considered and discussed the record and built a logical bridge between the evidence in the record and the RFC, the Court finds no basis for reversal under Mascio.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is AFFIRMED, that Plaintiff's Dispositive Brief [Doc. #13] is DENIED, that Defendant's First Motion for Judgment on the Pleadings/Dispositive Brief [Doc. #15, #16] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 6th day of March, 2024.

                                                  /s/ Joi Elizabeth Peake
                                              United States Magistrate Judge